**Ronald SHIVERS, Respondent,**

v.

**Larry BARNES, Appellant.**

**No. WD 43691.**

Missouri Court of Appeals,
Western District.

July 23, 1991.

William L. Webster, Atty. Gen., Paul M. Rauschenbach, Asst. Atty. Gen., Jefferson City, for appellant.

Ronald Shivers, Moberly, pro se.

Before NUGENT, P.J., and
WASSERSTROM, Senior Judge,
KENNEDY and GAITAN, JJ.

NUGENT, Presiding Judge.

Ronald Shivers, an inmate at the Missouri Training Center for Men at Moberly, filed a *pro se* petition against corrections officer Larry Barnes in small claims court seeking the return of or compensation for an Afghan confiscated during a routine search of his assigned room. Mr. Barnes headed the classification team that recommended disposal of the Afghan as part of a sanction for a conduct violation by Mr.

Shivers. The court denied Mr. Shivers' claim. He timely moved for trial de novo, and defendant Barnes moved to dismiss based on plaintiff Shivers' failure to exhaust his administrative remedies and on the doctrine of official immunity. The court overruled the motion.

In a bench trial the circuit court awarded plaintiff Shivers judgment in the amount of fifty dollars. Defendant Barnes now appeals the judgment on two counts. *First,* he claims that the circuit court had no jurisdiction because Mr. Shivers had not exhausted his administrative remedies. *Second,* he asserts that the circuit court should have found that the official immunity doctrine shielded his actions performed within the scope of his duties as a corrections officer. The respondent filed no brief in this court.

We reverse the judgment.

Mr. Shivers, an inmate at the training center, had an Afghan in his room, and on October 19, 1989, during a routine room search, corrections officers discovered and confiscated it. The officers filed a conduct violation report citing him for possession of the contraband Afghan. At the conduct violation hearing, the classification team found Mr. Shivers in violation of institutional rules because he had not properly acquired or possessed the Afghan. Institutional rules define what items inmates may possess while in residence. After the hearing, the classification team recommended several disciplinary sanctions for Mr. Shivers, including the disposal of the Afghan. Defendant Barnes, as head of the classification team, participated in the formulation of this recommendation. The institution's superintendent approved the recommendations.

## I.

Mr. Shivers claims that the Afghan belonged to him and that confiscation of his property violated § 217.200 of the Revised

Statutes of Missouri, 1986, and the training center's rules; however, effective August 28, 1989, before the seizure of plaintiff's Afghan, the Missouri legislature repealed § 217.200. The applicable statute, § 217.-917, adopted in 1989 provides that "[u]nauthorized personal property found in the possession of offender [sic] housed in a department facility may be impounded and disposed of per [sic] policy directives."

Section 217.360.1(3) declares that the knowing possession by a correctional facility inmate of "[a]ny article or item of personal property which an offender [i.e., an inmate] is prohibited by law or by rule and regulation of the division [of adult institutions] from receiving or possessing" shall constitute a class A misdemeanor.

The rules and regulations mentioned in § 217.360 find their authority in § 217.175, which directs the division director to "make such rules, regulations and orders as are proper and necessary for the management of the correctional facilities...." Earlier statutes made similar provisions.[1] The statute also provides that the director "shall establish rules and regulations pertaining to offender disciplinary procedure and shall establish an offender grievance procedure." § 217.370.

At the time plaintiff Shivers filed this action, January 4, 1990, the Department of Corrections and Human Resources had duly adopted a regulation pertaining to grievance procedures.[2] The regulation authorized a grievance procedure that involved a four-step process, beginning with the submission of a grievance form to the institution head and ending in step four, an appeal to the Director of the Department of Corrections and Human Resources.

The record shows that the plaintiff did not pursue his administrative remedy through all four steps but turned instead to the small claims court. On trial de novo, he abandoned his demand for a return of

1. *See* §§ 216.020 and 216.115, R.S.Mo.1978.

2. Title 14—Department of Corrections and Human Resources; Div. 20—Division of Adult Institutions; Ch. 16—Inmate Rights (20–116.040

Inmate Grievance Procedure). Adopted effective Nov. 1, 1980, revised effective Nov. 1, 1981, pursuant to §§ 216.020 and 216.115, R.S.Mo. 1978.

the Afghan, and the court awarded judgment in his favor for fifty dollars.

■ The defendant contends that the circuit court never acquired jurisdiction of this case because the plaintiff failed to exhaust his administrative remedies by pursuing his grievance to an end under the grievance regulation. Defendant Barnes relies upon *Mickles v. Board of Trustees of Policemen's and Firemen's Retirement Fund,* 770 S.W.2d 697 (Mo.App.1989), and other Missouri and foreign cases.

The Achilles' heel of the defendant's argument, however, appears in subdivision (6) of the grievance regulation itself, which effectively excuses the grievant from mandatory exhaustion of the grievance procedure. It says: "Each inmate shall be encouraged to exhaust the above procedure before approaching the courts. However, access to courts is available at any time." Thus we cannot hold that the plaintiff's turn to the courts for relief before exhausting the regulation's grievance remedies denied the court jurisdiction of the case.

### II.

■ Defendant Barnes also asserts his official immunity from liability. Under the official immunity doctrine, public officers acting within the scope of their authority incur no liability for injuries arising from their discretionary acts but may incur liability for injuries caused by ministerial acts they perform within the scope of their authority. *Rustici v. Weidemeyer,* 673 S.W.2d 762, 768–69 (Mo.1984); *Kanagawa v. State of Missouri ex rel. Freeman,* 685 S.W.2d 831, 835 (Mo.1985). Thus, the issue in this case becomes whether the trial court should have denied Mr. Barnes' motion to dismiss or found his actions discretionary and, therefore, cloaked with official immunity.

■ A discretionary function involves "the exercise of judgment." *Sherrill v. Wilson,* 653 S.W.2d 661, 667 (Mo.1983). On the other hand, a ministerial function includes "clerical" conduct or acts performed by one "without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Rustici v. Weid-*

*emeyer,* 673 S.W.2d at 769. Mr. Barnes, as head of the classification team, recommended a course of discipline following a hearing on a conduct violation report. He and the team had the discretion to choose the form and extent of the recommended punishment.

Had he performed a clerical function with narrowly prescribed action, no need would have arisen for the classification team to meet and review the evidence. The teams' actions had the purpose of forming a judgment and making a recommendation to the superintendent. The superintendent's letter stated that he had reviewed the recommendations and thought they were "very lenient." The team members could have recommended greater sanctions based on their collective judgment.

Since Mr. Barnes exercised a discretionary function, the official immunity doctrine applied, and the trial court erred in failing to recognize defendant Barnes' official immunity.

For the foregoing reasons, we reverse the judgment.

All concur.