Lee DAVIS, Respondent,

v.

**LAMBERT–ST. LOUIS INTERNA-
TIONAL AIRPORT and Wil-
liam Powell, Appellants.**

No. SC 87138.

Supreme Court of Missouri,
En Banc.

June 13, 2006.

Daniel J. Emerson, Patricia A. Hageman, Edward J. Hanlon, Office of Vity Counselor, St. Louis, for Appellants.

Mary L. Bruntrager, Charles H. Billings, St. Louis, for Respondent.

Jeremiah W. (Jay) Nixon, Atty. Gen., Robert Presson, Asst. Atty. Gen., Jefferson City, for Amicus Curiae State of Mo.

Leland F. Dempsey, Kansas City, for Amicus Curiae Missouri Association of Trial Attys.

MICHAEL A. WOLFF, Chief Justice.

Is a governmental entity that is subject to liability for automobile accidents by statute shielded from liability if its employee has official immunity from personal liability?

### Factual Background

The City of St. Louis owns and operates the Lambert–St. Louis International Airport. William Powell is a police officer for the airport. While Powell was responding to an emergency call on airport property, his police vehicle collided with a vehicle that Lee Davis was driving. Davis sued Powell and the airport alleging that Powell was negligent. Davis did not allege that the airport was directly negligent for the accident. Rather, Davis sued the airport for vicarious liability for Powell's negligence because the accident occurred in the course and scope of Powell's employment. The jury returned a verdict assessing 25 percent of the fault to Powell and the remaining 75 percent to Davis. The jury found Davis' total damages to be $25,000.00. The trial court entered judgment in accordance with the fault allocation and damages, but ordered only the airport to pay.

Powell and the airport filed a motion for a new trial and for judgment notwithstanding the verdict raising official immunity as to Powell and immunity for the airport based on a *respondeat superior* theory. The trial judge did not rule on the motion, and it was deemed overruled under Rule 78.06. The court of appeals, after opinion,

transferred the case to this Court under Rule 83.02. The judgment is affirmed.

## Powell's Liability

■■■ Official immunity protects public officials from liability for alleged acts of ordinary negligence committed during the course of their official duties for the performance of discretionary acts. *Kanagawa v. State By and Through Freeman*, 685 S.W.2d 831, 835 (Mo. banc 1985). Whether an act is discretionary or ministerial depends on the "degree of reason and judgment required" to perform the act. *Id.* at 836. An act is discretionary when it requires "the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued." *Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo. banc 1984) *quoting Jackson v. Wilson*, 581 S.W.2d 39, 43 (Mo.App.1979). Conversely, a ministerial function is "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Id.* To discern whether an act is ministerial or discretionary, the court looks to three factors: (1) the nature of the duties; (2) how much policymaking or professional expertise and judgment the act involves; and (3) the consequences of withholding immunity. *Kanagawa*, 685 S.W.2d at 836.

■■■ Police officers, driving in non-emergency situations, do not benefit from official immunity. *Brown v. Tate*, 888 S.W.2d 413, 415 (Mo.App.1994). When an officer is responding to an emergency, however, the officer exercises judgment and discretion and is entitled to official immunity. Initially, Powell's duties require the exercise of discretion. The accident occurred while Powell was responding to an "officer-in-need-of-aid" emergency call. Powell exercised judgment in determining which route to take based on the amount of traffic in the area and the location of the officer in need. He further exercised judgment and professional expertise in determining the speed he could safely travel. Imposing liability upon the officer in these cases might delay responses to emergency calls, thereby adversely affecting officers or citizens in need of emergency assistance. *Bachmann v. Welby*, 860 S.W.2d 31, 34 (Mo.App.1993).

■■■ The parties' dispute centers on whether section 304.022 [1] provides official immunity to Powell. Section 304.022,[2]

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. Sections 304.022.4(1), (2), and (3), RSMo Supp.1997, provide the following in relevant part:

> (1) The driver of any [emergency] vehicle ... shall not sound the siren thereon or have the front red lights or blue lights on except when such vehicle is responding to an emergency call or when in pursuit of an actual or suspected law violator, or when responding to, but not upon returning from, a fire;
>
> (2) The driver of an emergency vehicle may:

> (a) Park or stand irrespective of the provisions of sections 304.014 to 304.026;
>
> (b) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;
>
> (c) Exceed the prima facie speed limit so long as the driver does not endanger life or property;
>
> (d) Disregard regulations governing direction of movement or turning in specified directions;
>
> (3) The exemptions herein granted to an emergency vehicle shall apply only when the driver of any such vehicle while in motion sounds audible signal by bell, siren, or exhaust whistle as may be reasonably necessary, and when the vehicle is

which allows drivers of emergency vehicles to violate certain traffic rules in emergency situations, does not affect official immunity. Official immunity is a common law doctrine relieving public officials of liability for negligence when they are acting in a discretionary capacity. *See Reed v. Conway,* 20 Mo. 22 (1854). By its plain language, section 304.022 does not abolish, abrogate, or in any way modify official immunity. *State ex rel. Golden v. Crawford,* 165 S.W.3d 147, 149 (Mo. banc 2005), provides an example of a statute where official immunity is superseded by a civil liability statute that specifically removes liability for certain emergency system operators, with exceptions for willful or wanton misconduct and gross negligence. Section 304.022, by its terms, does not provide official immunity.[3] An officer may determine that a particular emergency requires a less conspicuous, or even a silent, approach. In those cases, an officer exercises discretion in *not* activating his lights and sirens.

Powell was acting in a discretionary manner, however, and is entitled to official immunity under the common law doctrine. The doctrine does not negate the jury's finding that Powell was 25 percent at fault.[4] Although Powell was negligent, his actions fall within the doctrine of official immunity. Recovery against Powell is precluded. The remaining question is whether the airport, as Powell's employer, is liable for Powell's negligence under the doctrine of *respondeat superior.*

### The Airport's Liability

Governmental entities, such as the airport, are protected by sovereign immunity. *See Jungerman v. City of Raytown,* 925 S.W.2d 202, 204 (Mo. banc 1996). The statute waives sovereign immunity for "[i]njuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles ... within the course of employment." Section 537.600.1(1).[5] This is an "absolute waiver[ ] of sovereign immunity in all cases." Section 537.600.2; *Cf. Kun-*

---

equipped with at least one lighted lamp displaying a red light or blue light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle.

3. To the extent they are inconsistent with this decision, the following decisions are overruled: *Creighton v. Conway,* 937 S.W.2d 247 (Mo.App.1996); *Pace v. Pacific Fire Protection District,* 945 S.W.2d 7 (Mo.App.1997); *State ex rel. City of Fulton v. Hamilton,* 941 S.W.2d 785 (Mo.App.1997); *Costello v. City of Ellisville,* 921 S.W.2d 134 (Mo.App.1996); *McGuckin v. City of St. Louis,* 910 S.W.2d 842 (Mo.App.1995).

4. Powell and the airport did not raise on appeal the issue of whether the trial court erred in refusing to submit their proposed jury instruction based on officer Powell's compliance with section 304.022. The trial court apparently refused this instruction because it determined that the standard of care was outlined in section 304.010, requiring all

drivers of motor vehicles to "exercise the highest degree of care." This requirement is now codified in section 304.012 and does not exclude emergency vehicles nor does it directly modify official immunity. Since they did not raise it, the issue of whether they are entitled to an instruction is not reached.

5. Section 537.600.1(1) provides:

1. Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances: (1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment;

*zie v. City of Olivette,* 184 S.W.3d 570 (Mo. banc 2006). It is undisputed that Powell was operating a motor vehicle in the course of his employment with the airport and that Davis' injuries were a direct result of the collision. The jury's finding that Powell was 25 percent at fault is supported by the record. The airport does not enjoy immunity as a result of its governmental status.

▆▆▆ The airport argues that it should be shielded from liability by Powell's official immunity. Under the doctrine of *respondeat superior,* an employer is responsible for the negligent acts of its employee if the employee's tortious acts were done within the scope of his employment duties. *Helm v. Wismar,* 820 S.W.2d 495, 497 (Mo. banc 1991). The airport argues that because its liability is derivative of Powell's, it cannot be held liable where Powell is not.

The airport's argument is unpersuasive. It fails to recognize the personal nature of official immunity and it contradicts the statutory waiver of sovereign immunity.

The court of appeals has reached conflicting results on this issue. Some cases determine that when the governmental employer's liability is based upon *respondeat superior,* official immunity shields the employer from liability. Generally, these cases simply reason that because the offi-

cial is not liable for negligence, the employer should also remain judgment-free.[6]

Other cases conclude that sovereign immunity and official immunity are distinct legal concepts and that government employers cannot take advantage of immunities afforded to their employees.[7]

▆▆▆ The latter conclusion is more persuasive because it is consistent with sovereign immunity and with the purposes of official immunity. The function of official immunity is to protect individual government actors who, despite limited resources and imperfect information, must exercise judgment in the performance of their duties. *Kanagawa,* 685 S.W.2d at 836. The aim of official immunity is to allow officials to "make judgments affecting the public safety and welfare" without being burdened by "[t]he fear of personal liability." *Green v. Denison,* 738 S.W.2d 861, 865 (Mo. banc 1987). Official immunity is personal to the officeholder.

▆▆▆ To be certain, if an employee is exonerated from liability because the employee has not committed a tort, the governmental employer also is exonerated. *Stanley v. City of Independence,* 995 S.W.2d 485, 488 (Mo. banc 1999). But here, the jury found that Powell was negligent; he committed a tort. Official immunity does not deny the existence of this

---

**6.** *See Schutte v. Sitton,* 729 S.W.2d 208, 211 (Mo.App.1987) (holding that since there is no ground for recovery of officer's alleged negligence, there is also no ground for recovery against employer under *respondeat superior* ); *State ex rel. Conway v. Dowd,* 922 S.W.2d 461, 463 (Mo.App.1996) (holding that "where the claim is premised on the theory of *respondeat superior* and not on the negligent or intentional acts of the employer, the plaintiff cannot recover against the employer if he does not have grounds for recovery against the employee"); *McGuckin v. City of St. Louis,* 910 S.W.2d 842, 844–845 (Mo.App.1995) (stating in *dicta* that where an employee is protected

by official immunity, there is no grounds for recovery against the government employer). These cases should no longer be followed.

**7.** *See Bachmann v. Welby,* 860 S.W.2d 31, 34 (Mo.App.1993) (stating in *dicta* that although officer was entitled to official immunity, plaintiff may have a cause of action against the city employer where the legislature has expressly waived sovereign immunity); *Oberkramer v. City of Ellisville,* 650 S.W.2d 286, 294 (Mo.App.1983) (stating in *dicta* that sovereigns cannot take advantage of immunities afforded to officials).

tort; rather, it provides that Powell will not be liable for damages caused by his negligence.[8] WILLIAM L. PROSSER, LAW OF TORTS 970 (West Publ'g Co.1982) ("[Official] immunity does not mean that conduct which would amount to a tort on the part of other defendants is not still equally tortious in character, but merely that [the defendant] ... is given absolution from liability."); RESTATEMENT (THIRD) OF TORTS sec. E19 cmt. f (2000) ("Immunities ordinarily protect persons whose tortious acts would subject them to liability."); 63C AM. JUR.2D *Public Officers and Employees* sec. 307 (1997) (waiver of sovereign immunity provides "a remedy for an already existing cause of action previously barred ...; suits to recover damages pursuant to this express waiver are brought under the theory of respondeat superior."). Official immunity provides that an official cannot be held liable for acts of ordinary negligence, not that they have a right to act with negligence. Even when official immunity protects a government employee from liability there remains "tortious conduct" for which the governmental employer can be derivatively liable. *Devine v. Kroger Grocery & Baking Co.*, 349 Mo. 621, 162 S.W.2d 813, 817 (1942). A governmental employer may still be liable for the actions of its employee even if the employee is entitled to official immunity.

The balance struck by the statutes' interplay with the common law places accountability on the government employer for the actions of its subordinates. Section 537.600.1(1) waives sovereign immunity for the negligent operation of a motor vehicle; all such governmental liability is necessarily premised upon *respondeat superior* relationships. Governments operate their vehicles through employees. It would be inconsistent with that statutory waiver of sovereign immunity to recognize a judicially-created doctrine of official immunity to shield the government employer from liability where employees are acting in a discretionary capacity. Quite simply, the doctrine of *respondeat superior* does not provide a shield to government employers where the statute provides that the government will be liable for the actions of its employees in all cases involving the operation of motor vehicles within the course of employment.

## Conclusion

Official immunity is personal to the officer and does not preclude a finding of negligence on the part of the officer. That personal immunity does not shield a government employer from liability. The judgment of the circuit court is affirmed.

All concur.

---

**8.** Cases that suggest official immunity negates a duty should not be followed. These cases include: *Green v. Denison*, 738 S.W.2d 861, 865 (Mo. banc 1987); *McGuckin v. City of St. Louis*, 910 S.W.2d 842, 844 (Mo.App.1995); and *Scher v. Purkett*, 847 S.W.2d 76, 78 (Mo. App.1992).